## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| DONALD DUANE SCHAFF, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO.: CV213-072 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | (Case No.: CR210-6) |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Donald Schaff ("Schaff"), who is currently incarcerated at the Federal Correctional Institution-Low Camp in Littleton, Colorado, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a Response, and Schaff filed a Reply. For the reasons which follow, Schaff's motion should be **DENIED**.

## STATEMENT OF THE CASE

Schaff was convicted, after a jury trial, of: possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). The Honorable Lisa Godbey Wood entered a judgment of acquittal on the possession count after finding that Schaff's convictions implicated double jeopardy concerns. (Doc. No. 7, pp. 7–8). Schaff was sentenced to 121 months' imprisonment, which was the lowest end of his United States Sentencing Guidelines' range. Schaff filed a direct appeal, and the Eleventh Circuit Court of

Appeals affirmed his conviction and sentence. United States v. Schaff, 454 F. App'x 880 (11th Cir. 2012).

In this motion, Schaff sets forth numerous grounds of ineffective assistance of trial counsel and three (3) grounds of ineffective assistance of appellate counsel. Schaff alleges that the cumulative effect of these alleged errors necessitates the reversal of his conviction. The Government asserts that Schaff is not entitled to his requested relief.

## DISCUSSION AND CITATION TO AUTHORITY

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685-86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

AO 72A
(Rev. 8/82)

been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13.

I.     **Ineffective Assistance of Trial Counsel**

A.     **Failure to suppress computer evidence acquired during the state prosecution**

Schaff asserts that his trial counsel failed to have "tainted evidence", which was acquired as a result of a State search warrant, suppressed. (Doc. No. 1-1, p. 7). Schaff contends that the first State warrant authorized the seizure of "digital cameras, laptop computers, pornographic movies and other pornographic material used by the perpetrator[,]" yet officers seized his desktop computer. (Id. at p. 8). Schaff asserts that the officers' actions render the seizure unlawful, and the evidence obtained as result should be suppressed. Schaff also asserts that the portion of the warrant allowing for "pornographic material" constitutes a general warrant with no basis for officers to rely on to fulfill a lawful execution. Schaff further asserts that officers did not leave a copy of the search warrant or properly return a copy of the executed warrant as directed, which also necessitated suppression of the evidence. Schaff alleges that Kevin Gough's failure to raise these issues during his federal prosecution constitutes prejudice under Strickland.

The Government contends that Schaff cannot meet the Strickland standard because, even though Schaff's attorney was aware of potential arguments because he filed a motion to suppress evidence in State court, filing such a motion in federal court would have been futile. The Government asserts that the search warrant's language

3

was not a "general warrant" and allowed officers to search any place which might have pornographic materials, including Schaff's desktop computer. The Government also asserts that the affidavit in support of the search warrant established probable cause to believe Schaff was engaged in criminal conduct, and evidence of his criminal conduct could be found at his home. The Government further asserts that a suppression motion based on a purported violation of a state court's instructions would be unavailing in this Court.

### 1.    Probable Cause

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (internal citation omitted). "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts" and is based on the "totality of the circumstances test." Id. (internal citations and punctuation omitted).

In her Affidavit and Application for a Search Warrant, Detective Harritte Sirmon, then with the City of St. Mary's Police Department, stated that she began a criminal investigation of Schaff based on allegations that he molested his twelve year old

daughter, and the most recent event occurred in January 2008. Sirmon also stated that the daughter informed her that Schaff brought his laptop computer into the daughter's bedroom to watch pornographic movies and tried to take pictures of her posing "like the women in the pornographic movies." (Doc. No. 1-2, p. 8). Sirmon further stated that she received information from the Naval Criminal Investigative Service ("NCIS"), King's Bay, Georgia, that Schaff told a co-worker that he was going to break the military's protective order and go to his home to destroy "the computers in the home even though he had erased the data from them." (Id.).

Based on Sirmon's Affidavit, which was dated February 27, 2008, there was probable cause to believe that evidence relating to pornographic material could have been found at Schaff's home located at 247 Creekside Drive, St. Mary's, Georgia. Although Schaff's daughter only mentioned a laptop computer, the information from NCIS indicated that Schaff may have had pornographic materials on more than one (1) computer. Schaff has not shown that Gough performed deficiently for failing to file a motion to suppress evidence on the basis of lack of probable cause in this Court. Even if Gough had so performed, Schaff cannot show that he was prejudiced by Gough's performance because this motion would have been denied.

### 2. General Warrant

It appears that Schaff argues that the search warrant was overbroad. However, "[a]gents are entitled to seize documents if the warrant lists functionally equivalent" items, and that "[t]he seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search." United States v. Beckett, 544 F. Supp.2d 1346, 1350–51 (S.D. Fla. 2008). Similar evidence

5

not specified in the warrant can still be seized if it had a sufficient nexus to the crime being investigated. United States v. Davis, 589 F.2d 904, 906 (5th Cir. 1979). The seizure of a specific item characteristic of a generic class of items defined in the warrant does not constitute an impermissible general search. United States v. Reyes, 798 F.2d 380, 382–83 (10th Cir. 1986).

The warrant application stated that Detective Sirmon had probable cause to believe that evidence of pornographic materials could be found on "digital cameras, laptop computers, pornographic movies[,] and other pornographic material used by the perpetrator." (Doc. No. 1-2, 7). Although "desktop computers" were not specified in the warrant, desktop computers are of the same class of items as "laptop computers", which were specified in the warrant. In addition, a desktop computer had a sufficient nexus to the investigation Detective Sirmon was conducting, making the seizure of Schaff's desktop computer permissible. Schaff fails to meet the Strickland standard and is not entitled to his requested relief.

### 3. Failure to leave a copy of the warrant/return the executed warrant

Under applicable federal law, there is no requirement that a copy of the warrant be left at a home at the same time the search is conducted. FED. R. CRIM. P. 41(f)(1)(C) (The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the

AO 72A
(Rev. 8/82)

property.). An officer must return the executed warrant, along with a copy of the inventory, to the judge designated on the warrant. FED. R. CRIM. P. 41(f)(1)(D).[1]

There is no evidence that a copy of the second warrant was left at Schaff's house or that Sirmon returned the executed warrant to the state magistrate judge. (Doc. No. 1-2, p. 16). However, the second search warrant was issued to allow for the search of documents, materials, and photographs associated with pornography which could be recovered from items Sirmon had already seized based on her first warrant. Schaff presents nothing which indicates that, under Georgia law, Sirmon was required to leave a copy of the second warrant at his home or that she was required to file a return of the executed warrant with the state magistrate judge. Even though Sirmon may not have complied with these requirements, there is no evidence before the Court that a putative motion to suppress would have been granted on this basis. Thus, Schaff does not meet the Strickland standard and is not entitled to his requested relief.

### B.    Failure to request a Franks hearing

Schaff asserts that the affiant for the second State search warrant did not exercise good faith in applying for the warrant, thus requiring a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Schaff avers that the affiant deliberately, willfully, and intentionally deceived the magistrate judge to obtain the warrant. Specifically, Schaff contends that the affiant omitted from the application that Schaff's daughter recanted her earlier allegations of molestation against him, which caused the affidavit to be lacking in probable cause. Schaff also contends that the second forensic

---

[1] Under Georgia law, the failure to leave a copy of the executed warrant is considered a "technical irregularity" which does not affect "the substantial rights of the accused." O.C.G.A. § 17-5-31. Thus, a motion to suppress made on this basis would be denied. State v. Stafford, 277 Ga. App. 852, 627 S.E.2d 802 (2006).

AO 72A
(Rev. 8/82)

analysis of his hard drives conducted as a result of this warrant was unreasonable, as it occurred 15 months after the first analysis. Schaff asserts that the searches did not occur within the time limits proscribed by the warrants (grounds 2 and 6 of petition).[2]

The Government asserts that Schaff presents no evidence which reveals that the affiant for the second search warrant was aware that the molestation allegations had been recanted. The Government also asserts that the computers listed in the May 5, 2008, warrant were examined 15 days later; however, the Government asserts that the warrant did not require that the search be finished within ten (10) days. The Government further alleges that Schaff's Fourth Amendment rights were not violated when the evidence was later reviewed and found to contain suspected child pornography.

The validity of a search warrant affidavit is measured by the test set forth in Franks v. Delaware, 438 U.S. 154 (1978). Under Franks, if an affidavit submitted to a judicial officer in support of a request for a search warrant contains a false statement made knowingly and intentionally, or with reckless disregard for the truth, and if, stripped of that false statement, the affidavit does not establish probable cause, the search warrant must be voided. Franks, 438 U.S. at 155-56. "In short, to prevail in a Franks challenge, [a defendant] must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in reckless disregard for the truth, and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant." O'Ferrell v. United States, 253 F.3d 1257, 1267 (11th Cir. 2001)

---

[2] The undersigned will address the issue of the delay in conducting the second forensic analysis and the search authorized by the second warrant in Section "E" of this Report.

AO 72A
(Rev. 8/82)

(internal citations and punctuation omitted). "A search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth[.]" Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002). "Nonetheless, the warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." Id.

To the extent Schaff asserts that the affidavit in support of the second search warrant contained false statements, thus prohibiting a probable cause determination, and that Gough was ineffective for failing to file a motion pursuant to Franks, such an assertion must fail. By Schaff's own account, his daughter recanted her allegations against him on April 29, 2008, and made the recantation only to her aunt and friends. The daughter's aunt sent a letter to Fleet and Family Services on May 6, 2008, to make a notification of the daughter's recantation. On May 8, 2008, Fleet cancelled the daughter's appointments. (Doc. No. 1-3, p. 2). However, this second application was made on May 5, 2008, before anyone other than family and friends were made aware of the daughter's recantation. In addition, there is nothing before the Court which reveals that the affiant knew of this recantation prior to May 5, 2008. A Franks hearing request would not have benefited Schaff in any way, and Gough cannot be deemed to have rendered ineffective assistance of counsel on this basis.

## C. Serial number discrepancy

Schaff asserts that his attorney was ineffective for failing to note to the jury or bring to the Court's attention a discrepancy between the computers' serial numbers listed in the first and second warrants. The Government contends that the only possible

discrepancy appears to relate to the information provided in the search warrant return, not a discrepancy between the item seized and the item which was analyzed.

Schaff fails to establish that this alleged discrepancy would have had any bearing on the jury's finding of guilt. Accordingly, Schaff has not met his burden under Strickland and is not entitled to his requested relief.

### D.    Flawed chain of custody of evidence

Schaff contends that Gough should have raised, before the Court and the jury, that a break in the chain of custody may have occurred, which calls into question the reliability of this evidence. The Government responds that Schaff fails to show how bringing this argument would have changed the outcome of the case, as such a claim goes to the weight rather than the admissibility of this evidence.

"Any challenge to the chain of custody" of evidence "'goes to the weight rather than the admissibility of the evidence.'" United States v. Cruz, 508 F. App'x 890, 898 (11th Cir. 2013) (quoting United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985)). "Thus, the adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of . . . evidence." Lopez, 758 F.2d at 1521.

Schaff correctly notes that a flawed chain of custody can call into question the reliability of the evidence introduced. However, there is nothing before the Court indicating that Chief Judge Wood would have sustained any objection to the introduction of evidence based on a flawed chain of custody argument or, more importantly, that the jury would have found the evidence used to convict Schaff to be less than reliable based on such an argument. Schaff has not shown that the jury might have acquitted

him. Schaff has not met the Strickland standard and is not entitled to relief on this ground.

### E. Forensic computer analysis executed beyond the time allowed in the warrant

Schaff next asserts that the second search warrant only allowed a ten (10) day window to perform a search of the hard drives. Schaff contends that the search occurred beyond this time period. Schaff also contends that another analysis was conducted 15 months after the first. Schaff asserts that Gough rendered ineffective assistance because he failed to raise these issues.

The Government asserts that Fourth Amendment does not specify that search warrants have expiration dates. The Government also asserts that courts have concluded that a search conducted after the expiration of a search warrant does not rise to the level of a constitutional violation and cannot serve as the basis for suppressing evidence.

### 1. Search after second warrant issued

"While the Fourth Amendment does not specify that search warrants must contain expiration dates," Georgia law requires that: "[t]he search warrant shall be executed within ten days from the time of issuance." O.C.G.A. 17-5-25. "Any search warrant not executed within ten days from the time of issuance shall be void and shall be returned to the court of the judicial officer issuing the same as 'not executed.'" Id. However, under Georgia law, the "search warrant may be executed at any reasonable time." O.C.G.A. § 17-5-26. Georgia courts have interpreted these Code sections regarding the searches of computers and determined that the analysis of items seized during the execution of a valid search need not occur within ten (10) days, and the State

11

is not required to obtain a second warrant to analyze a properly seized computer. Mastrogiovanni v. State, ___ Ga. App. ___, 751 S.E.2d 536, 539–40 (Nov. 15, 2013). The Georgia Court of Appeals also determined that, even if O.C.G.A. § 17-5-25 is violated, the evidence obtained as a result of a search warrant is not automatically subject to suppression, State v. Stafford, 277 Ga. App. 852, 853, 627 S.E.2d 802, 803 (2006), so long as the "technical irregularity" does not affect "the substantial rights of the accused." O.C.G.A. § 17-5-31.

The second search warrant was issued on May 5, 2008, for the recovery of digital evidence which could have been contained on items seized from Schaff's home on February 27, 2008. Officers were permitted ten (10) days from that date to conduct the necessary search and seizure. (Doc. No. 1-2, pp. 13–16). The first forensic analysis occurred on May 20, 2008, which was five (5) days after the "expiration" of the warrant. However, this search conducted five (5) days beyond the date authorized by the warrant could not be the basis of a motion to suppress. The probable cause set forth in the second warrant still existed at the time of the search. Further, Schaff has not shown that this search would not have occurred if O.C.G.A. § 17-5-25 had been followed precisely or that the execution of the second warrant beyond the ten (10) days affected his substantial rights. Schaff fails to show that Gough was deficient by failing to file a motion to suppress on this basis or that, even if Gough was deficient that Schaff was prejudiced by that deficiency.[3]

---

[3] Schaff does not meet the Strickland standard under this enumeration of error even if federal law applied to the motion to suppress. Under Rule 41 of the Federal Rules of Criminal Procedure, a search warrant is to be executed "within a specified period of time not to exceed 10 [now 14] days." United States v. Schumaker, 479 F. App'x 878, 882 (11th Cir. 2012) (citing United States v. Gerber, 994 F.2d 1556, 1559 (11th Cir. 1993)). "Unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the [R]ule had been followed, or (2) there is evidence of

## 2. Second forensic search

The Fourth Amendment "contains no requirements about when the search or seizure is to occur or the duration." Gerber, 994 F.2d at 1559. "Many courts have recognized the unique nature of computer searches, the computer's enormous data storage capacity, and the inherent delay involved in conducting a comprehensive forensic analysis of computer records." United States v. Mitchell, No. CR407-126, 2007 WL 2915889, at *11 (S.D. Ga. Oct. 3, 2007), adopted by 2007 WL 3102167 (S.D. Ga. Oct. 22, 2007), and vacated and remanded on other grounds by United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009) (finding that a three-week delay in applying for a search warrant unreasonable under the circumstances of the case); see, e.g., United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (D. Conn. 2002) (noting that "computer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search"); United States v. Hernandez, 183 F. Supp.2d 468, 480 (D. P.R. 2002) (noting that "[n]either FED. R. CRIM. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic examination after it has been seized pursuant to a search warrant," and where delay occurs "extensions or additional warrants are not required.

In this case, the NCIS report, dated June 6, 2008, indicates that there were several items of "borderline child pornography images[,]" "links with questionable target filenames", and email messages "suggest[ing] child pornography related materials[ ]"

---

intentional and deliberate disregard of a provision in the Rule." Id. (internal citation and punctuation omitted). Courts addressing this issue "have concluded that completing a search shortly after the expiration of a search warrant does not rise to the level of a constitutional violation and cannot be the basis for suppressing evidence so long as probable cause continues to exist, and the government does not act in bad faith." Gerber, 994 F.2d at 1560.

AO 72A
(Rev. 8/82)

found on Schaff's computers. (Doc. No. 1-13, p. 2). The first forensic evaluation of Schaff's computers, which occurred on May 20, 2008, and entered on September 3, 2008, was only for "CyberTip Search" and "Identified Series Search". This evaluation did not include internet searches. (Doc. No. 1-9, p. 1). In addition, the request for the evaluation was "that the images be reviewed for any known child victims that were identified by law enforcement in past investigations." (Id. at p. 2). The National Center for Missing & Exploited Children ("NCMEC") noted that it had "no information pertaining to any of the individuals seen in [the submitted] files." (Id.).

Though there is nothing before the undersigned indicating when the federal government received Schaff's case for investigation, it is reasonable to assume it was after the first forensic evaluation occurred and before the second forensic evaluation occurred. The Government's forensic computer expert, Special Agent Thomas West, testified that he became involved in the investigation in 2009 and was asked by NCIS Agent Picard to conduct an examination. (Doc. No. 86-1, pp. 29, 36). West stated that he performed a "write block" on Schaff's computers, which is something which ensures that no data is added to a hard drive from the time of its receipt so as to not interfere with an investigation. (Id. at pp. 37–38). West was able to find 348 images in the "unallocated space" on Schaff's desktop. (Id. at pp.48–49; Doc. No. 87, p. 4). The last date he could attribute to these images was April 5, 2007. (Doc. No. 86-3, pp. 11–12). The last date he could determine on which anyone logged on to the computer was February 26, 2008, which is the day before the computers were seized. (Doc. No. 87-1, p. 6). West testified that he used different forensic software for his examination than the

AO 72A
(Rev. 8/82)

first examiner did and that not all forensic computer experts use the same software. (Id. at p. 37).

There is nothing before the Court which indicates that Schaff's constitutional rights were violated as a result of the time lapse between the first forensic analysis and the second analysis. In addition, there is nothing before the Court which indicates that, had Gough filed a motion to exclude evidence obtained as a result of this second analysis (based on Schaff's contentions), such a motion would have been successful. Schaff has not satisfied Strickland and is not entitled to relief.

### F. Inaccuracies in the Presentence Investigation Report ("PSI")

Schaff avers that Gough failed to object to the portions of his PSI which attributed 389 images of suspected child pornography without adequate proof that the images actually depicted child pornography or were received via the internet. Schaff contends that the number of images was used to enhance his sentence, and Gough should have objected to the use of all of these images during sentencing. Schaff maintains that, had Gough objected to the number of images contained in the PSI, his sentence range would have been 108 to 135 months' imprisonment.

The Government asserts that Schaff has not shown that, had Gough filed objections to the PSI, those objections would have been successful. The Government also asserts that Gough made sufficiency of the evidence arguments in his motion for new trial and on appeal, but these arguments were rejected.

Schaff's "tainted evidence" argument appears to stem from his previously made assertions that probable cause was lacking so that the search warrants were not legally permissible under the Fourth Amendment. As noted above, these assertions are

15

without merit. Schaff's remaining assertion—that he was improperly attributed with having 389 images, which enhanced his sentence, and Gough was ineffective for failing to object—is equally without merit. Agent West testified that 389 images of suspected child pornography were attributable to Schaff (346 images in the unallocated space and 41 additional images in specified folders). (Doc. No. 86-1, pp. 44, 48–49). The Eleventh Circuit determined that there was sufficient evidence supporting Schaff's conviction for receipt of child pornography, relying in part on West's testimony. Thus, Schaff cannot show that Gough's failure to object to the number of images was deficient and, more importantly, that Schaff was prejudiced by this failure. Schaff is not entitled to relief on this ground.

### G. Funds for expert witnesses

Schaff contends that Gough (his retained counsel) failed to seek an expert witness even though Jeffrey Berry (his appointed counsel) was able to obtain funds from this Court for an expert witness. Schaff asserts that this expert witness could have performed his own forensic examination of the computers, which would have been "a crucial component of the defense's case in chief." (Doc. No. 1-1, p. 27). Schaff contends that Gough was not prepared or diligent in his defense, which fell below the objective standard of reasonableness. Schaff also contends that he was entitled to have the assistance of an expert at the Government's expense.

The Government asserts that Schaff ignores evidence that Gough worked with a computer forensics expert up to trial and was able to cross-examine the Government's expert on critical matters. The Government also asserts that Schaff cannot show any prejudice from Gough's failure to request funds to pay for an expert witness.

16

Based on Schaff's financial affidavit, the undersigned appointed Berry to represented Schaff during the course of the criminal prosecution against him. (CR210-6, Doc. Nos. 8–9). Berry filed a motion for funds to employ a computer forensics expert, which the undersigned granted. (Id. at Doc. Nos. 15, 26). Schaff then retained Gough to represent him during the federal criminal proceedings. (Id. at Doc. No. 35). The undersigned then vacated the Order granting Berry's motion for funds, as Schaff had retained counsel. (Id. at Doc. No. 38). Because Schaff had retained counsel, he was no longer eligible for the provision of monies for an expert witness from the Court's coffers. See 18 U.S.C. § 3006A.

However, Gough was in contact with Mr. Larry Daniel, the expert Berry had retained, in May 2010. (Doc. No. 1-6, pp. 8–9). In addition, Gough had a forensic expert (presumably Daniel) look at Schaff's computers the day before the trial, and that expert apparently made no indication that the computers were operating in an incorrect manner. (CR210-6, Doc. No. 86-4, p. 35). Moreover, Gough made objections to several portions of West's expert testimony, and he thoroughly cross-examined West during the trial of this case, including the critical issues relating to the knowing receipt of certain images. (Id. at Doc. No. 87, p. 27; Doc. No. 87-1, p. 21).

There is nothing before the Court which indicates that Gough did not at least consult with a forensics expert before the trial of this case. Nor is there any evidence that Gough's cross-examination of the Government's expert was anything other than thorough. Schaff cannot show Gough performed deficiently in this respect and is not entitled to his requested relief on this ground.

AO 72A
(Rev. 8/82)

## H.    Prosecutorial misconduct/Brady materials

Schaff next contends that Gough failed to raise the assertion that the Government's attorney suppressed exculpatory material before the grand and petit juries. Schaff contends that the original forensic analyses of his computers revealed no pornographic material, and this is the information which was not presented to the juries. Schaff asserts that the second analysis, which occurred 15 months later, showed 299 NCMEC hits. Schaff asserts that Gough's failure to raise this as an issue was ineffective assistance.

The Government avers that the NCMEC does not identify every image of child pornography that exists, and courts have ruled that a jury cannot rely on NCMEC reports as proof that an image is child pornography. The Government also avers that NCMEC reports only corroborate other evidence that a jury may rely on to determine whether an image is child pornography. Thus, the Government contends, a claim that Gough was ineffective for failing to accuse the Government of misconduct because it did not present NCMEC-related evidence must fail. The Government also contends that, even if the NCMEC report could be interpreted as exculpatory material, it was not required to present this evidence to the grand jury. The Government further contends that there is no Brady violation unless there is a reasonable probability that the non-disclosure of exculpatory evidence would change the result of the trial. The Government alleges that Gough brought the discrepancy between the two analyses to the jury's attention.

Schaff's claim that the Government failed to provide him with exculpatory evidence rests upon Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme

18

Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. A Brady violation is established when a petitioner shows that: "(1) the prosecution possessed evidence favorable to the accused, because it was either exculpatory or impeaching, and did not disclose it to the defense; (2) the State suppressed the evidence such that the defense did not otherwise possess the evidence and could not reasonably have obtained it; and (3) the evidence was material, and its absence yielded prejudice." Gary v. Hall, 558 F.3d 1229, 1255 (11th Cir. 2009). "Evidence is material so as to establish prejudice only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

Contrary to Schaff's assertion, there was evidence of some suspected child pornography images on Schaff's computers after the first analysis. The NCIS examination revealed that the picture files analyzed "revealed numerous borderline child pornography images. Additionally, links with questionable target filenames were observed[,]" and the subject title on some "emails suggests child pornography related materials. Due to forensic software limitations, the images on these emails were not acquired." (Doc. No. 1-13, p. 2). What Schaff refers to as the "first forensic analysis report" (doc. no. 1-9), was a "formal request" "that the images be reviewed for any known child victims that were identified by law enforcement in past investigations." (Id. at p. 2) (emphases supplied). The submitted files "were reviewed by CRIS (Child

AO 72A
(Rev. 8/82)

Recognition and Identification System). NCMEC has no information pertaining to any of the individuals seen in these files." (Id.). This finding does not mean that the images contained on Schaff's computer were not suspected child pornography images; rather, this finding simply means that the NCMEC had no record of the individuals in the images because these individuals had not been identified through previous investigations. This evidence was not exculpatory in any way. Moreover, there is no evidence that the Government did not present this evidence to defense counsel. There is no evidence of a Brady violation, and therefore, Gough cannot be deemed ineffective for failing to raise this issue during the course of the prosecution of this case. Schaff is not entitled to his requested relief on this ground.

## I.    Insufficient evidence for conviction

Schaff contends that there was insufficient evidence to support his conviction, even with the presentment of "clearly tainted evidence[.]" (Doc. No. 1-1, p. 35). Schaff alleges that his counsel was ineffective during cross-examination because he did not "effectively highlight the critical fact" that there was no proof that he ever received any type of child pornography. (Id. at p. 36).

The Government maintains that this sufficiency of the evidence claim was raised on appeal, and Schaff was not successful. Thus, the Government asserts that Schaff cannot relitigate this issue in a section 2255 motion. The Government also asserts that, even if Schaff could bring this claim in his motion, this claim is conclusory.

A district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). Once a matter has been decided adversely to a defendant on direct appeal, it

AO 72A
(Rev. 8/82)

cannot be re-litigated in a collateral attack under section 2255, unless there has been an intervening change in the law. Id.; Davis v. United States, 417 U.S. 333, 342 (1974). The mere re-characterization of a claim that was brought on direct appeal does not merit a district court's review on a different, yet previously available, legal theory. Nyhuis, 211 F.3d at 1343.

The Eleventh Circuit Court of Appeals determined that there was sufficient evidence to support Schaff's conviction for receipt of child pornography. In so doing, the Eleventh Circuit cited to the testimony provided by all of the Government's witnesses. Schaff is prohibited from pursuing this claim in his section 2255 motion. In addition, even if Schaff could pursue this claim here, he cannot show that Gough failed to raise a sufficiency of the evidence claim before Chief Judge Wood, as he made this argument before her. Chief Judge Wood rejected Gough's assertions as to the receipt count. (CR210-6, Doc. No. 77). Schaff is not entitled to his requested relief on this ground.

**J.    Federal prosecution a sham/Bartkus violation**

Schaff alleges that the federal prosecution against him was a sham and was used as an instrument of vindictiveness by the State, in violation of Bartkus v. Illinois, 359 U.S. 121 (1959). Schaff maintains that his counsel was ineffective for failing to raise this issue.

The Government contends that Schaff's Bartkus claim is misplaced, as he does not offer any evidence suggesting a nonfrivolous double jeopardy claim. The Government asserts that the State's case remained open and unresolved until after the conclusion of the federal trial.

21

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "This guarantee protects defendants against successive prosecutions for the same criminal offense." United States v. Gholikhan, 370 F. App'x 987, 990 (11th Cir. 2010) (citing United States v. Baptista-Rodriguez, 17 F.3d 1354, 1360 (11th Cir. 1994)). However, "elementally identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns. This dual sovereignty doctrine is rooted in the common-law conception of crime as an offense against the sovereignty of a government." Id. (citations and quotations omitted). In Bartkus, "the Supreme Court noted that the record did not support a claim that the State of Illinois, in bringing its prosecution, was merely a tool of federal authorities or that the state prosecution was a sham." Baptista-Rodriguez, 17 F.3d at 1361. "From this language courts have inferred a sham prosecution exception [to dual sovereignty]. To fit within the exception, the defendant must show that one sovereign was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." Id. (citations omitted). The Eleventh Circuit "has repeatedly declined to confront the validity of the sham prosecution in those cases where the defendant had failed in any event to demonstrate sham prosecutions." Id. "Self-serving conclusions are insufficient to establish a prima facie case under a narrow exception to the dual sovereign doctrine. Evidence that one sovereign dominated the investigation" may bolster a sham prosecution claim, but "factual allegations. . . relating to the investigation alone [are] insufficient to" qualify for the sham prosecution exception to the dual sovereignty doctrine. Golikhan, 370 F. App'x 990.

22

Schaff makes nothing more than conclusory allegations that the federal prosecution of him was a sham because the State of Georgia was controlling the federal prosecution. To the contrary, the record before the Court indicates that the federal government alone was in charge of its prosecution of Schaff. While Schaff faced charges in both state and federal courts, this alone is insufficient to support a claim that the double jeopardy clause was violated. Gough cannot be said to have been deficient in failing to raise this claim, and Schaff is not entitled to his requested relief on this ground.

### K.    Possessory rights in computers

Schaff avers that his possessory rights were violated because the State used federal authorities to conduct a forensic analysis on his computer's hard drive. Schaff also avers that there was an unreasonable delay in securing a search warrant, which also infringed upon his possessory rights.

The Government contends that a warrantless seizure did not occur, and Schaff's possessory rights were not violated by the later review of this seized evidence. Thus, the Government asserts that Gough was not ineffective for failing to raise this issue.

"[E]ven a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" Mitchell, 565 F.3d at 1350 (quotation omitted). "The reasonableness analysis should "reflect a careful balancing of governmental and private interests." United States v. Vallimont, 378 F. App'x 972, 975–76 (11th Cir. 2010). In those cases where a forensic search of a computer occurred after the "expiration" of a warrant, courts have been

reluctant in suppressing evidence obtained as a result of the forensic search if that search was reasonable under the circumstances. United States v. Hodges, 1:09-CR-562, 2010 WL 4639238, at *3 (N.D. Ga. Sept. 15, 2010); see also, United States v. Burgess, 576 F.3d 1078, 1097 (10th Cir. 2009) (concluding that evidence seized from a computer and hard drives should not be suppressed even though law enforcement continued their forensic examination after the expiration of the warrant because probable cause for the search was not affected by the delay and the defendant did not identify any prejudice from the delay); United States v. Cameron, 652 F. Supp.2d 74, 81–82 (D. Me. 2009) (concluding that the search warrant was timely executed when computer equipment was seized within the period the warrant stipulated and that continued forensic inspection of the computer and discs did not violate the Fourth Amendment); United States v. Gorrell, 360 F. Supp.2d 48, 54 & n.5 (D. D.C. 2004) (concluding that the ten day period in the search warrant only refers to the search of the defendant's home and does not limit the amount of time in which the government is required to complete off-site forensic analysis of seized items); United States v. Habershaw, No. 01-10195-PBS, 2002 WL 33003434, at *8 (D. Mass. May 13, 2002) (holding that off-site forensic analysis of seized hard drive image does not constitute a second execution of the warrant).

Under Rule 41(e), "[a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." FED. R. CRIM. P. 41(e). "Courts have held that this latter phrase encompasses only situations in which the government holds

AO 72A
(Rev. 8/82)

property lawfully seized beyond the period of time it needs the property for investigative and/or prosecutorial purposes." United States v. Beach, 113 F.3d 188, 189–90 (11th Cir. 1997). The seizure of a computer's hard drive can implicate a person's possessory interest. Mitchell, 2007 WL 2915889, at *7 (citing United States v. Jacobsen, 466 U.S. 109, 113 & n.5 (1984)).

The first forensic evaluation of Schaff's computer revealed the existence of some suspected child pornography images, as noted in Section H of this Report. Based on that evaluation, the government (whether state or federal) would have been entitled to retain Schaff's hard drive and the contents therein during its continued investigation and/or until the trial of this case. In addition, the Government filed a notice of forfeiture of Schaff's computers at the conclusion of the prosecution and resulting guilty verdict. (CR210-6, Doc. No. 83-1). Because there was what was believed to be incriminating evidence on Schaff's hard drives, he has not shown he had a possessory interest in those hard drives. Thus, Gough was not deficient for failing to object to the Government's continued possession of the hard drives pending the trial of this case. Schaff is not entitled to his requested relief on this ground.

## L.    Abuse of discretion by trial court

Schaff asserts that the trial court prevented him from presenting a complete defense because the Court vacated the order permitting funds for an expert witness. Schaff alleges that the Court dismissed the possession charge instead of the receipt charge, in violation of his rights. Schaff alleges that the maximum sentence he should have received was 120 months' imprisonment under 18 U.S.C. § 2252A(b)(1) (possession) rather than 240 months maximum under 18 U.S.C. § 2252A(b)(2) (receipt)

AO 72A
(Rev. 8/82)

and, accordingly, the 121-month sentence he received was unreasonable. Schaff alleges that Gough was ineffective for failing to raise these issues. The Government asserts that Schaff's claims are based on conclusory allegations and do not entitle Schaff to any relief.

A petitioner "is not entitled to habeas relief 'when his claims are merely conclusory allegations unsupported by specifics' or 'contention that in the face of the record are wholly incredible.'" Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (quoting Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)); see also United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992) (stating that a petitioner must set forth sufficient allegations to demonstrate that he is entitled to his requested relief).

Schaff has not set forth any allegations with any specificity which reveal that the trial court abused its discretion. In addition and as noted above, once Schaff retained counsel, he was no longer entitled to the Court's provision of funds for the payment to an expert witness, 18 U.S.C. § 3006A, yet Gough still consulted with a forensic computer expert. Gough raised the sufficiency of evidence for the possession and receipt counts as issues in his motion for acquittal, and Chief Judge Wood found Gough's argument concerning the possession count to be persuasive and granted the motion as to that issue. Schaff does not set forth any assertions which reveal how this ruling violated his rights. Chief Judge Wood sentenced Schaff to the low end of the Guidelines range he faced based on his conviction for receipt of child pornography, which was 121 to 157 months' imprisonment. Schaff does not (and cannot) show how he was prejudiced by Gough's alleged failure to raise these issues. Schaff is not entitled to his requested relief on this ground.

AO 72A
(Rev. 8/82)

**M.    Pre-indictment delay**

Schaff asserts that the State delayed his criminal proceedings, which severely prejudiced him and gave federal prosecutors a tactical advantage to convict him. Schaff also asserts that the separate prosecutors worked together to overwhelm him and to cripple his defense because he: had depleted funds, which caused him to be unable to effectively defend against both prosecutions; was segregated from his family and support structure based on a military protective order; was denied bond in the federal prosecution based on the State's hold; and was worn down because he had to defend himself on the State, federal, and military levels at the same time. Schaff contends that Gough waged a strategic and vigorous defense during the State proceedings but "rolled-over" during the federal prosecution.

The Government contends that Schaff fails to allege any facts which demonstrate he suffered actual prejudice by the delay between the start of the State investigation and the federal indictment or that any delay was a deliberate act by the federal government to gain a tactical advantage.

The statute of limitations is the primary safeguard against the government bringing overly-stale criminal charges. United States v. Marion, 404 U.S. 307, 322 (1971). A defendant asserting that the government delayed indicting him "must show that (1) he was actually prejudiced in preparing his defense, and (2) the delay was unreasonable." United States v. Wetherald, 636 F.3d 1315, 1324 (11th Cir. 2011) (quoting United States v. Solomon, 686 F.2d 863, 871 (11th Cir. 1982)). Moreover, the delay must have been deliberately undertaken in order to gain a tactical advantage. United States v. Benson, 846 F.2d 1338, 1343 (11th Cir. 1988). "Accordingly, in order

27

to obtain dismissal based on pre-indictment delay, a defendant must show both deliberate delay to gain a tactical advantage and actual prejudice." United States v. Horton, 270 F. App'x 783, 786 (11th Cir. 2008) (citing Stoner v. Graddick, 751 F.2d 1535, 1542–43 (11th Cir. 1985)). "With regard to deliberate delay in order to gain a tactical advantage, the Supreme Court has made clear that investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused." United States v. Lovasco, 431 U.S. 783, 795 (1977). Moreover, we have held that negligent delay is also insufficient to support dismissal under this prong of the analysis. Benson, 846 F.2d at 1343. The prejudice alleged "must rise to constitutional proportions in order to support dismissal." United States v. Keel, 254 F. App'x 759, 760 (11th Cir. 2007).

Schaff has not shown that the federal government intentionally delayed in indicting him or that any alleged delay was an attempt to gain a tactical advantage against him. Thus, even if Gough could be considered to have performed deficiently by failing to raise this issue, Schaff cannot show that he suffered prejudice as a result of Gough's failure. Schaff is not entitled to his requested relief.

## N.    Government's errors during grand jury proceedings

Schaff asserts that several errors occurred during the grand jury proceedings. Schaff contends that the Government's chief witness before the grand jury provided perjured testimony, and the Government allowed the witness to perjure himself (ground 17 in petition). Specifically, Schaff contends that an agent testified that a forensic analysis conducted on his computer revealed a greater number of suspected child pornography images than the results submitted to the grand jury. Schaff contends that

28

his indictment should be dismissed with prejudice due to the grand jury irregularities, such as the Government not releasing the grand jury materials. Schaff contends that Federal Rule of Criminal Procedure 6 should be declared unconstitutional because this Rule permits the Government to hold the materials. Schaff also contends that there is no evidence that the members of the grand jury concurred, nor is there evidence that the indictment was presented in open court. Schaff contends that Gough failed to challenge the composition of the grand jury, and he also failed to challenge the errors of the grand jury proceedings, as previously set forth.

The Government responds that, to the extent Schaff is making a broader claim that grand jury violations occurred, such a claim is procedurally barred. The Government asserts that Schaff overlooks the fact that there was a lapse of time between the first forensic evaluation and the return of the indictment, and during that time, additional forensic analyses were conducted; thus, the Government contends, Schaff fails to prove there was perjured testimony during the grand jury proceedings. The Government also contends that Schaff's contention of "irregularities" is not supported by facts, and these alleged irregularities are not of the type which would render the proceedings fundamentally unfair. The Government asserts that, to the extent these assertions fall under "ineffective assistance of counsel", Schaff's claims fail.

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (internal citation and punctuation

AO 72A
(Rev. 8/82)

omitted). The procedural default rule "'is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)). There are two exceptions to the procedural default rule[4]. A defendant can overcome "application of the procedural default bar by show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Id. (internal citation omitted) (alteration in original). An allegation of ineffective assistance of counsel can be "cause" to excuse procedural default. Murray v. Carrier, 477 U.S. 478, 488 (1986).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." United States v. Cosme, 134 F. App'x 391, 392–93 (11th Cir. 2005) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988)). "[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Id. (citation omitted). Additionally, the Supreme Court has noted that a petit jury's subsequent guilty verdict renders "any error in the grand jury proceeding connected with the charging decision harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986) (citing racial discrimination in the composition of the grand jury as an exception).

To the extent Schaff contends that he received ineffective assistance of counsel because these grounds were not raised previously, thus excusing his procedural default

---

[4] Only one of the two exceptions could possibly be applicable in this case. Thus, the undersigned need not mention the miscarriage of justice, or actual innocence, exception.

AO 72A
(Rev. 8/82)

of these claims, such a contention must fail. Schaff has not shown that the Government's witnesses perjured themselves in front of the grand jury or that the Government knew that its witnesses proffered perjured testimony. Even if these alleged errors occurred during the grand jury proceedings, the petit jury's subsequent finding of guilt on both counts of the indictment rendered these alleged errors harmless. Gough was not deficient for failing to raise these issues, and Schaff cannot show that he was prejudiced as a result. Schaff is not entitled to his requested relief on this ground.

## II.   Appellate Counsel

To establish prejudice, "there must be a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002). A petitioner must "affirmatively prove prejudice." Strickland, 466 U.S. at 693. "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y. Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285–86 (2000)). Appellate counsel is not ineffective for failing to raise a meritless claim on appeal. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001).

AO 72A
(Rev. 8/82)

### A.    Failure to file a timely notice of appeal

Schaff asserts that Richard Allen, his appellate counsel, filed his notice of appeal 69 days after the deadline to do so expired. Schaff also asserts that the Government did not object to the untimely filing. However, Schaff maintains that, although he suffered no prejudice as a result, Allen's actions set the precedent for his actions going forward. The Government alleges that this claim must fail, given Schaff's concession that no prejudice inured to him.

The undersigned has included this enumeration of error to preserve the record. Given Schaff's concession that he was not prejudiced by Allen's untimely filing of a notice of appeal, he cannot show any entitlement to relief on this ground.

### B.    Use of Tenth Circuit Court of Appeals' decision

Schaff asserts that Allen was clearly ineffective by citing cases from the Tenth Circuit Court of Appeals, which have been overturned, in support of the venue and jurisdiction arguments. Schaff avers that Allen was ineffective for failing to use relevant Eleventh Circuit case law and showing that the Government's evidence was incorrect.

The Government contends that Schaff points to no case law which would have allowed him to fare better on appeal. The Government also contends that appellate counsel may have missed the mark in his approach, but Schaff cannot show prejudice based on the overwhelming evidence of his guilt.

The Eleventh Circuit stated that, even though it had not decided the jurisdictional element of a prior version of § 2252A(a)(2) in a published decision, it did not need to resolve that issue on appeal. The Eleventh Circuit noted that the Government was able to establish that "some of the child pornography had been created in Illinois and Florida.

AO 72A
(Rev. 8/82)

To reach Schaff's computers in Georgia, those images necessarily had to cross state lines. Thus, the evidence was sufficient to satisfy the interstate commerce element of § 2252A(a)(2)." (CR210-6, Doc. No. 99, p. 8). United States v. Shiver, 305 F. App'x 640, 641–42 (11th Cir. 2008) ("The government's computer expert testified that the file names and resolution of certain of the images indicated that they had arrived on Shiver's computer via the Internet. Since it is well-settled that the internet is an instrumentality of interstate commerce, this fact alone satisfies § 2252A(a)(5)(B)'s jurisdictional requirement.) (internal citation and punctuation omitted).

Allen was not deficient in failing to cite to Eleventh Circuit case law, as no controlling (i.e., published) precedent existed. Even if Allen's failure could be considered deficient performance, Schaff has not shown that he was prejudiced by Allen's failure to use Eleventh Circuit case law in support of his position on appeal because the Eleventh Circuit rejected Schaff's venue and jurisdiction arguments.

### C.    Failure to raise substantially more meritorious claims

Schaff avers that Allen failed to raise issues which were more meritorious than what he presented on appeal. The Government states that Schaff does not show that any claims would have been clearly stronger than the claims Allen raised.

"Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 568 (11th Cir. 2012) (citing United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000)). "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal." Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the

Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.").

Schaff has not shown what claims Allen should have raised on appeal. Even if Allen did not raise claims Schaff determined to be more meritorious than the grounds Allen did raise on appeal, there is nothing before the Court indicating that the result of Schaff's appeal would have been any different, i.e., that the Eleventh Circuit would have vacated or reversed this Court's judgment. Schaff is not entitled to his requested relief on this ground.

## III. Cumulative Errors

Schaff alleges that the errors he outlined in this Motion reveal that he was not afforded a fair trial or appeal, and his conviction must be reversed. The Government alleges that Schaff is not entitled to relief, as this claim is not supported by the record.

Schaff's contentions are without merit. United States v. Pierre, 486 F. App'x 59, 66 (11th Cir. 2012) (citing United States v. Waldron, 363 F.3d 1103, 1110 (11th Cir. 2004), for the notion that if there are no errors or a single error, there can be no cumulative error) (internal citation omitted).

### CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Schaff's motion to set aside, vacate, or correct his sentence, filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this _2 4th_ day of March, 2014.

_____

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

34